LONGPRÉ ET AL., PLAINTIFFS AND APPELLANTS, *v.* WOLFF ET AL., DEFENDANTS AND APPELLEES (RUCABADO, INTERVENOR AND APPELLEE).

APPEAL from the District Court of San Juan, Section 1, in an Action for Cancellation of Mortgage.

No. 1171.—Decided July 23, 1915.

DEBT—EXTINCTION BY PAYMENT.—When it is admitted as proven that the plaintiff paid the defendant the full amount of the debt, the legal conclusion must follow that the said debt was extinguished by payment, according to section 1124 of the Civil Code.

ID.—PAYMENT IN GOOD FAITH—RETENTION OF DEBT.—A payment is valid if made in good faith to the person in possession of the credit prior to the levy of an attachment by the intervenor and there is no judicial order to retain the debt.

ID.—CANCELLATION OF MORTGAGE.—When a debt is paid in full the debtor has a right to the cancellation of the mortgage which secured it.

ATTACHMENT—PREFERENCE.—According to article 44 of the Mortgage Law, in harmony with section 1824 of the Civil Code, a creditor who obtains the entry of a cautionary notice of attachment in his favor shall have preference with regard to the property attached only over those who have other claims against the same debtor contracted after such entry.

ID.—PROPERTY RIGHTS—PREFERENCE.—The entry of a cautionary notice of attachment by order of court and intended only to secure the result of a suit, neither creates nor determines any right, nor alters the nature of the obligations, nor can it convert into a real action or action of foreclosure an action which is not of such nature, and it has no other effect than to give preference as to the property attached to the creditor who secured the attachment over other creditors whose claims against the same debtor were contracted after the entry of said cautionary notice.

THIRD PARTIES—RECORD OF TITLE.—The third parties referred to in articles 23, 25 and 27 of the Mortgage Law are only those who have previously recorded their respective titles to the properties and rights in litigation.

ID.—PRIVATE INSTRUMENT.—The date of a private instrument shall be effective against third parties only from the day on which it may have been filed or recorded in a public registry, from the death of any of those who signed it or from the date on which it may have been delivered to a public official by virtue of his office.

ID.—EVIDENCE—ESTOPPEL.—A person who acknowledges the genuineness of written evidences of payment and does not question the dates thereof or give any reason why they are invalid, must accept the legal consequences of such acknowledgment and is estopped by his own acts from objecting to their probatory force in connection with the date of the payments.

ID.—EVIDENCE—PRIVATE INSTRUMENT—PRESUMPTION.—Section 1195 of the Civil Code is strictly applicable when there is no other evidence of an act or contract than a private document, but the said section does not provide that such a document combined with other probatory elements may not be held to prove the said act or contract as against a third party. The said section contains a presumption of law which may be overcome by evidence to the contrary.

The facts are stated in the opinion.

Messrs. *H. H. Scoville* and *Enrique Rincón* for the appellants.

Messrs. *Alvarez Nava & Domínguez* for the intervenor.

The defendants did not appear.

MR. CHIEF JUSTICE HERNÁNDEZ delivered the opinion of the court.

By a public deed executed before Notary Manuel F. Rossy on August 18, 1909, in the city of San Juan, Ramón Wolff Aboy and Gustavo Mourraille, the latter in his own right and as manager of the Puerto Real Central of which he, his mother, Nancy Nerón Longpré, and his brother and sisters Matilde, Amada, Emilia and Víctor Mourraille, were the owners, entered into a contract of bargain and sale whereby Ramón Wolff Aboy sold to the others a property belonging to him composed of 230.74 *cuerdas* of land situated in the island of Vieques for the sum of $28,750. The vendor acknowledged that he had received previously $8,750 of that sum and the vendees bound themselves to pay the remaining $20,000 on June 30, 1917, creating a mortgage on the said property as security for the payment of the said balance.

It was stipulated in the said instrument that the vendees should respect a lease of the property existing in favor of Díaz & Aboy for a period of ten successive crops, terminating June 30, 1917; that the vendor, Ramón Wolff Aboy, should receive the monthly rental of $112 as interest on the $20,000 secured by the mortgage in his favor, and that if for any reason Ramón Wolff Aboy should be able to deliver possession of the property to the vendees before the termination of the said lease, they would pay him the said $20,000 in the following manner: $10,000 six months after such delivery and a like sum six months later, or one year after delivery.

On November 9, 1911, the purchasers of the said property filed an amended complaint in the District Court of San Juan, Section 1, against Ramón Wolff Aboy and the firm of Díaz & Aboy, praying that Ramón Wolff Aboy be ordered to execute an acquittance of the mortgage for $20,000 created in his favor by the said deed of August 18, 1909; that in case of his failure to do so within the time to be fixed therefor in the judgment the marshal of the court should execute the same in the name of the said defendant; that the defendant be adjudged to pay to the plaintiffs the sum of $1,500 which remained due to them after the payment of the mort-

gage credit, with interest, costs and attorney fees, and that from the date of the judgment the defendants Díaz & Aboy be adjudged to pay to the plaintiffs the monthly rental of $112 which they are paying to defendant Wolff under their lease.

In addition to the facts recited in the deed of August 18, 1909, both as to the contract of bargain and sale and as to the lease, the plaintiffs alleged as grounds for their action that since the execution of the said deed they had paid various sums to defendant Ramón Wolff Aboy on account of the $20,000 to the extent that prior to June 15, 1911, they had paid him about $1,500 in excess of his total credit and that Ramón Wolff Aboy owed them that sum and had taken no steps to execute the corresponding acquittance although demand had been made upon him therefor.

Defendant Ramón Wolff Aboy having failed to appear to answer or demur to the complaint notwithstanding the fact that he was summoned by publication, default was entered against him on April 25, 1913, and although the firm of Díaz & Aboy, of which Ramón and Encarnación Aboy y Benítez and José Agustín Díaz are members, answered the complaint on February 16, 1912, opposing the same, later, or on March 1, 1913, the said firm and the plaintiffs stipulated that the former would withdraw their answer to the amended complaint and not file any other answer in the suit or place any obstacle in the way of the cancellation of the mortgage as prayed for in the complaint.

On November 28, 1911, Mateo Rucabado moved the court for leave to intervene in the suit and be joined as a party defendant, which the court granted by its order of December 4, following, and in the complaint in intervention he prayed that the action be dismissed and that the plaintiffs recover nothing from the defendants, alleging the following: (*a*) That as case No. 4926 he is prosecuting an action against Ramón Wolff Aboy in the same court for the recovery of $12,000 with interest at 12 per cent annually from July 29,

1911, the date on which his complaint was filed; (*b*) that the said complaint is based on the fact that on June 24, 1911, defendant Wolff signed a promissory note in favor of Ruca-bado duly authenticated before Notary Frank Antonsanti for the said sum of $12,000, payable on June 24, 1916, with interest at 12 per cent annually, pledging as a special guaranty for the fulfilment of the said obligation the interest owned by Wolff in the mercantile establishment known as Wolff's Auto Garage; (*c*) that disregarding that guaranty, by a public instrument executed on June 27, 1911, before Notary Guerra, Wolff sold his interest in the said concern to John Mitchell and his whole property now consists of only a mortgage credit of $20,000 which has been attached by Ramón Aboy Benítez to secure a claim of $20,000, for which suit is now pending against Wolff; (*d*) that in order to secure the effectiveness of the judgment which may be rendered in the action brought by Rucabado against Wolff, on July 31, 1911, the court of San Juan ordered the attachment, without security, of sufficient property therefor belonging to the debtor Wolff and the marshal attached the mortgage credit of $20,000 which was recorded in the Registry of Property of Humacao in favor of Wolff; (*e*) that the mortgage credit attached is the same mortgage whose cancellation is sought in the present action; (*f*) that the said attachment was recorded in the registry on August 11, 1911; (*g*) that the cancellation sought would affect gravely the interests of Rucabado as a creditor by notarial act with preference by an attachment levied on the credit whose cancellation is prayed for long before the filing of the original complaint in this suit; (*h*) that he denies all and each of the allegations of the complaint except those which refer to the creation and recording of the mortgage for $20,000 in favor of Ramón Wolff Aboy.

As special grounds of defense Mateo Rucabado alleges that the plaintiffs have no cause of action against him or against Wolff because Rucabado is a third party without

any civil or actual knowledge of the transactions or payments between the plaintiffs and defendant Wolff which did not appear in the registry of property when he recorded his right as Wolff's creditor.

The complaint in intervention was demurred to by the plaintiffs on the ground that it did not state facts sufficient to constitute a cause of action and also answered by a general denial of all and each of the allegations thereof.

The case went to trial and the court rendered judgment on April 4, 1914, dismissing the complaint without special imposition of costs, and the plaintiffs appealed therefrom to this court.

In addition to the evidence introduced by the plaintiffs tending to show that the plaintiffs had paid the $20,000 to defendant Ramón Wolff Aboy and that the latter had promised to cancel the mortgage, consisting of the testimony of witnesses Gustavo Mourraille, John Mitchell and Luis Amedée Bonet, documentary evidence was also introduced by the plaintiffs consisting of three letters from Ramón Wolff to Gustavo Mourraille, which are as follows:

First Letter. "Vieques, P. R., April, 1911. Mr. G. Mourraille, Vieques. Dear Gustavo: Please send me a check for $2,000 on account of my property, which added to what I have received already ($11,221.76) on account of the mortgage for $20,000 in my favor, makes a total of $13,221.76, there remaining a balance in my favor of $6,778.24. Very truly yours, (Signed) R. Wolff."

Second Letter. "San Juan, P. R., April 13, 1911. Mr. Gustavo Mourraille, Vieques, P. R. My esteemed friend: I have the pleasure of enclosing a promissory note in favor of the bank for $8,000, the amount of a loan which I was able to secure from Mr. Welty. He suggests that in endorsing the note you affix the seal of the Puerto Real Central. He also requires that you send to said bank by the bearer a letter stating that you will take up the said note at maturity; that is, that you go through the same formality as on the last occasion when you acted as my security. I have had the note drawn for $8,000, but as soon as it is discounted, which will be early on Monday, I will mail you the $2,000 which you advanced me and the receipt

of which I have acknowledged, or deposit the amount in the said bank, as you may elect. Very truly yours, (Signed) R. Wolff.''

Third Letter. ''Dear Gustavo: I enclose you a check for $1,500 on account of the $2,000 which you advanced me. As it is possible that I shall need a part of that amount to transact some business in New York, I have deducted $500 which I will hand you on my return. It is only because I have a balance of a little over $700 with you that I have done this, or rather, taken this liberty; otherwise I should not have done it. I write you this on board the ship and for that reason it is brief. Very truly yours, (Signed) Moncho.''

There were also introduced in evidence two promissory notes for $10,500 and $8,000, respectively, in favor of the American Colonial Bank, signed by Ramón Wolff and endorsed by G. Mourraille as manager of the Puerto Real Central and a check drawn on the American Colonial Bank by G. Mourraille as manager of the Puerto Real Central payable to Ramón Wolff on April 12, 1911, for $2,000. The two promissory notes had been paid by the Puerto Real Central on April 1 and 13, 1911.

The attorneys for intervener Rucabado admitted the existence of the said papers and that they were paid on the dates stated, but submitted that the intervener's rights were not affected thereby.

Counsel for Rucabado introduced evidence tending to show the following facts:

1. That on June 24, 1911, Ramón Wolff as principal and E. Vidal as surety signed a promissory note for $12,000 for value received to Mateo Rucabado or his order, payable June 24, 1916, with interest at 12 per cent annually, in which the said Wolff specially bound for the payment of the said sum his interest in the mercantile partnership doing business in this city under the style of Wolff's Auto Garage. The said promissory note was acknowledged on June 28, 1911, by an affidavit made before Notary Frank Antonsanti.

2. That by a public instrument of June 27, 1911, Ramón Wolff Aboy sold his interest in Wolff's Auto Garage.

3. That in civil case No. 4926, an action of debt brought by Mateo Rucabado against Ramón Wolff, the District Court of San Juan, Section 1, entered an order on July 31, 1911, that a writ issue to the marshal for the attachment of sufficient property of defendant Wolff to secure the sum of $12,000 as principal and $1,000 to cover the interest due and to become due and the costs, which attachment was levied on the mortgage credit whose cancellation is prayed for and recorded in the Registry of Property of Humacao on August 11, 1911.

4. That in another civil case brought in the District Court of Humacao and removed later to the District Court of the United States for Porto Rico by Ramón Aboy Benítez against Ramón Wolff *et al.* to clear title to real property and for damages, the judge of the Humacao court made an order on March 7, 1910, for the attachment of property of the defendants to respond for $20,000 damages and $500 as costs, which attachment was levied after notice was served on all the defendants except Ramón Wolff Aboy and presented in the Registry of Property of Humacao on March 14, 1910. It is to be noted that at the trial the parties agreed that the action in which the said attachment was levied had been withdrawn more than a year before.

In its opinion the lower court summed up the evidence as follows:

"The evidence clearly shows that Mourraille paid defendant Ramón Wolff Aboy at least $19,721.76 before the attachment was levied on the mortgage credit recorded in the registry. In a letter dated Vieques, April 12, 1911, defendant Wolff acknowledged that he had received $11,221.76 from Gustavo Mourraille on account of the mortgage. In that letter he asked Mourraille for $2,000, which was duly delivered to him, making a total of $13,221.76. Later Wolff received $8,000 from the said Mourraille of which he returned $1,500, the balance of $6,500 being credited on the mortgage. This shows beyond the slightest doubt that Mourraille paid Ramón Wolff $19,721.76 on account of the mortgage."

It is not alleged that there was any fraud in connection with the payments made by Mourraille to Wolff, in which connection the court says:

"We desire to state that there has been no fraudulent collusion of any kind in this case. Mourraille paid Wolff the amount of the mortgage and his testimony was so frank and sincere as to leave an impression that only a person of honest and upright conscience could create."

As is seen from the foregoing excerpts from the opinion of the lower court, the judge contradicts himself somewhat in regard to the payment of the debt by the plaintiffs to defendant Ramón Wolff Aboy, for he says first that Mourraille paid Wolff at lease $19,721.76 on account of the mortgage and then that Mourraille paid Wolff the whole amount of the mortgage. The second statement seems to us to be in greater harmony with the evidence if, in addition to the documentary evidence, we take into consideration the testimony of Gustavo Mourraille explaining in detail the different sums paid to Wolff and the fact that Wolff admitted to witnesses Amedée Bonet and John Mitchell that the mortgage had been paid.

Therefore, if we admit as proven that the plaintiffs paid defendant Ramón Wolff Aboy the full amount of the mortgage, the legal conclusion must follow that the said debt was extinguished by payment according to section 1124 of the Civil Code, which enumerates the payment or fulfilment of obligations as first among the ways of extinguishing the same. Section 1132 provides that a payment made in good faith to the person who is in possession of the credit shall release the debtor, and section 1133 that a payment made by the debtor to the creditor after he has been judicially ordered to retain the debt shall not be valid.

In the present case payment was made by Mourraille in good faith to defendant Wolff Aboy, who was in possession of the credit, prior to the attachment levied by the intervener

and Mourraille had not been judicially ordered to retain the debt; therefore the payment was made validly and released the plaintiffs with relation to defendant Wolff Aboy.

The foreging legal conclusion leads us to another, which is that when a debt is paid in full the debtor has a right to the cancellation of the mortgage which was accessory to and received its vitality from the principal obligation.

The said right of the debtor cannot be disturbed or barred by intervenor Mateo Rucabado for the single reason that he had obtained the entry in the registry of a cautionary notice of an attachment on the uncanceled mortgage credit of Ramón Wolff Aboy.

Construing article 44 of the Mortgage Law in the case of *Fernández v. Márquez & Co. et al.*, 3 P. R. R. (2nd Ed.) 200, we laid down the following doctrine:

"As expressly provided by article 44 of the Mortgage Law, and as repeatedly held by the Supreme Court of Spain in its judgment rendered on May 10, 1886, and in other judgments, and by this court in its judgment of November 1, 1902, a cautionary notice of an attachment authorized by a judicial order and intended only to guarantee the result of a suit, neither creates nor declares any rights, nor does it alter the nature of obligations, nor can it convert into a real action of foreclosure suit an action which is not of such nature, and has no effect other than to accord a preference to the creditor who has secured the attachment, only in so far as the property entered is concerned, over other creditors whose claims against the same debtor were contracted subsequently to the entry of such cautionary notice."

The same doctrine was followed in the case of *Hidalgo v. García de la Torre*, 4 P. R. R. (2nd Ed.) 64.

The plaintiffs are not suing Ramón Wolff Aboy for a debt contracted subsequently to that of Mateo Rucabado which gave rise to the entry of the cautionary notice of the attachment under consideration. The plaintiffs are not creditors but debtors of Wolff Aboy. This case does not involve a question of preference of credits; therefore, instead of favoring the claims of the intervener article 44

of the Mortgage Law is against them in providing that a creditor who obtains the entry of a cautionary notice in his favor shall have preference with regard to the property against which the notice appears only over those who have another claim against the same debtor contracted subsequently to such entry.

Mateo Rucabado has no right to oppose the cancellation merely because of the entry of the cautionary notice of the attachment. The acknowledgment of such a right would be equivalent to the recognition in him of a real right in the attached credit as if the said credit had been mortgaged to secure the amount Wolff Aboy owed Rucabado. Rucabado did not take the precaution of having Wolff Aboy secure his credit by a mortgage on the credit which he might have against the plaintiffs, and it is not allowable in law that the same result be obtained by means of an entry of an attachment as would have been obtained by the creation of a mortgage.

The lower court is of the opinion that, according to the jurisprudence laid down by the Supreme Court of Spain and by this court, intervener Rucabado has not acquired any real right in the attached property and that he cannot be considered as a third party within the provisions of the Mortgage Law, which, in harmony with the Civil Code, only allows him preference as to the property recorded and only as regards subsequent credits. But the said court understands that under the provisions of the Civil Code Rucabado is a third party whose rights cannot be questioned except by virtue of the evidence required by law in order to avoid fraud and simulation, and establishing as a basis that the plaintiffs have not introduced any public documents of a date prior to that of the record of the attachment but only private documents to prove the payment of the debt, the date of which, so far as concerns Rucabado, can be considered only as from the date on which they were filed in the suit, pursuant to section 1195 of the Civil Code, it reaches the conclusion

that although the debt has been actually paid, it can only be held to have been paid as to Rucabado who is a third party subsequently to the record of the attachment, and therefore the attached mortgage credit is subject to the result of the action brought by Rucabado against Ramón Wolff Aboy.

We agree with the conclusion of the lower court that Rucabado is not a third party within the provisions of the Mortgage Law, but, according to the doctrine laid down in the judgments of the Supreme Court of Spain of May 17 and December 12, 1898, the third parties referred to in articles 23, 25 and 27 of the Mortgage Law are only those who have previously recorded their respective titles to the properties and rights in controversy. *Valdecilla* v. *Auffant*, 1 D. P. R. 304; *Vidal & Co.* v. *El Banco Territorial y Agrícola*, 2 D. P. R., 231; *Batista* v. *Taboas et al.*, 15 P. R. R. 382, and *Sociedad Española de Auxilio Mutuo* v. *Rossy*, 17 P. R. R., 77.

We admit also that Rucabado is a third person according to the provisions of the Civil Code and that as such the provisions of section 1195 of the Civil Code are applicable to him, providing that the date of a private instrument shall be considered, with regard to third persons, only from the date on which it may have been filed or entered in a public registry, from the death of any of those who signed it or from the date on which it may have been delivered to a public official by virtue of his office.

In accordance with that section, if Wolff Aboy had given the plaintiffs one or more receipts for partial payments of the amount due and there were no other evidence of such payments than the said receipts and Rucabado had denied their dates, then Rucabado would be entitled to invoke the said section in his defense.

In this case there is no showing of receipts signed by Ramón Wolff Aboy for amounts paid but letters written by Wolff Aboy and papers received by a banking institution in which neither the plaintiffs nor defendant Wolff Aboy are

interested were introduced in evidence to prove the payment of the debt by the plaintiffs to the said defendant, in addition to which Mourraille explained the circumstances of the payments made and two witnesses testified to admissions made by Wolff Aboy of the payment of the debt and his willingness to cancel the mortgage.

Furthermore, at the trial the intervener himself, Mateo Rucabado, admitted the existence of the two promissory notes and the check introduced in evidence by the plaintiff and also that they were paid on the dates specified thereon, although, as he says, this does not affect his rights as intervener. In short, Rucabado has admitted the truth of the dates of payment of the said notes and check, which dates are prior to the entry of the attachment, and only questions the scope and validity of the same as regards him, claiming that under the provisions of section 1195 of the Civil Code the said dates are not valid as against him.

It seems to us that if Rucabado acknowledges the genuineness of the said papers without questioning the dates of same or giving any reason why they are invalid, he must accept the legal consequence of such acknowledgment and is estopped by his own acts from objecting to their probatory force in connection with the dates of the payments.

We are of the opinion that section 1195 of the Civil Code is strictly applicable when there is no other evidence of an act or contract than a private document; but the said section does not provide that such a document combined with other probatory elements may not be held to prove that the said act or contract is valid as against a third person, according to the judgment of the Supreme Court of Spain of February 18, 1898, Civil Jurisprudence, Vol. 83, p. 408.

The said court ratified that doctrine in its judgment of April 16, 1910, in which it held that "although it cannot be denied that appellant Constantino Vega had the character of a third person because he was not a party to the two contracts of bargain and sale by virtue of which Vicente Alvarez

acquired from Ildefonso Alvarez the ownership of the three rural properties, whence flows his right to redeem four of a like character which are bounded thereby and which, together with others, Carlos Vega sold to the defendant by a public instrument of August 17, 1908, that is no reason for holding, as contended by the appellant, that the legal date of the first two contracts evidenced by a private document is not the date stated in them because as to third parties the date must be considered, according to the provisions of article 1227 of the Civil Code (section 1195 of the Revised Code), from the day following the execution of the said public instrument when the said documents were taken to the office of the property tax collector, inasmuch as the said article contains a presumption of law which may be overcome by evidence to the contrary, and after weighing the testimony of witnesses which is not reviewable on appeal the trial court held that the dates of the said documents are those on which the contracts were made.'' Civil Jurisprudence, Vol. 117, p. 663.

Therefore, according to the doctrine of the Supreme Court of Spain, which we accept as sound, article 1227 of the Spanish Civil Code, which is the same as section 1195 of our code, only contains the presumption that the date of a private contract, in the absence of proof to the contrary, is, as regards third persons, the date on which it was filed or entered in a public registry, or of the death of any of the persons who signed it, or on which it was delivered to a public official by virtue of his office.

Pursuant to the foregoing doctrine, when it is shown, as was done in the present case, by letters of defendant Wolff Aboy, by notes and checks, by the testimony of the plaintiff and even by the testimony of the intervener himself that the indebtedness of plaintiffs to defendant Ramón Wolff Aboy was discharged prior to the date on which the attachment was entered in the registry of property, as was found by the lower court, the logical conclusion is that the said payment

has legal effect as to intervener Rucabado and that therefore the mortgage securing the debt should be cancelled as prayed for by the plaintiffs.

The foregoing doctrine cannot be considered as unsafe in the sense that according to it there may be a possibility that after a mortgage credit has been attached the debtor may agree with the creditor to simulate payment prior to the date of the attachment and defeat the rights of the creditor in whose favor the attachment was recorded, because, if the payment is so made it must be duly proved apart from the evidence of the private document, and if the contrary doctrine were accepted the creditor could also enter into a fraudulent combination with a third party in order to defraud the debtor and force him to pay the debt a second time.

The trial judge himself admitted the force of the doctrine during the trial, for when counsel for the plaintiffs introduced in evidence private documents to prove payment he expressed himself as follows: "The court is of the opinion that if it is shown that Gustavo Mourraille paid Wolff, the payment will be effective against any other person in the absence of evidence showing fraud between Mourraille and Wolff as against the intervener. Now, of course, as a general rule the date of a private contract is considered only as of the date on which the requirements of the Civil Code have been complied with * * *. The court is of the opinion that if on the date on which the attachment was entered in the registry of property the mortgage credit had been paid, the fact that the same had not been cancelled on that day would vest no right in him. He acquired what there actually was and if there was no debt on that date he acquired nothing by virtue of the attachment."

Our decision in the case of *Córdova et al.* v. *Suris et al.,* 19 P. R. R. 1170, does not support the opposite theory which the judge advanced later in his opinion, for that case is entirely distinct from the present one. That was an action of intervention in which the plaintiff introduced in support of

her claim only a private document executed in her favor by her husband prior to the attachment which gave rise to the intervention, whereas this is a case of the cancellation of a mortgage in which there is sufficient evidence to show that the debt secured was paid before the attachment was levied.

As we have said, since the mortgage created by the plaintiffs in favor of defendant Ramón Wolff Aboy should be canceled because the credit secured thereby has been fully paid, the defendant firm of Díaz & Aboy must pay to the plaintiffs hereafter the instalments of rent which it has been paying heretofore to defendant Wolff Aboy as interest on the debt.

For the foregoing reasons the judgment appealed from should be reversed and another rendered instead decreeing the extinction by payment of the debt of $20,000 contracted by the plaintiffs in favor of defendant Ramón Wolff Aboy by the public deed of August 18, 1909, and ordering the cancellation of the mortgage on the rural property described in the said deed as security for the said debt and also that from the date of the judgment the defendant firm of Díaz & Aboy shall pay to the plaintiffs the monthly rental of $112 which it has been paying to defendant Wolff Aboy as interest on the debt, without special imposition of costs.

*Reversed.*

Justices Wolf, del Toro, Aldrey and Hutchison concurred.